**UNITED STATES DISTRICT COURT**                                      JS-6
**CENTRAL DISTRICT OF CALIFORNIA**

<u>**CIVIL MINUTES -- GENERAL**</u>

Case No.    **CV 25-6716-JFW(RAOx)**                     Date:  September 11, 2025

Title:    Jeromy Moon, et al. -v- Pacific Gas and Electric Company, et al.

---

**PRESENT:  HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| **Shannon Reilly** | **None Present** |
| **Courtroom Deputy** | **Court Reporter** |

| **ATTORNEYS PRESENT FOR PLAINTIFFS:** | **ATTORNEYS PRESENT FOR DEFENDANTS:** |
|---|---|
| None | None |

**PROCEEDINGS (IN CHAMBERS):**   **ORDER DENYING DEFENDANT PACIFIC GAS AND ELECTRIC COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS [filed 8/13/2025; Docket No. 45];**

**ORDER GRANTING PLAINTIFFS JEROMY MOON'S, RICARDO LUNA'S AND GUY GRAFF'S MOTION TO REMAND [filed 8/13/2025; Docket No. 44]**

On August 13, 2025, Defendant Pacific Gas and Electric Company ("Defendant" or "PG&E") filed a Motion for Judgment on the Pleadings.  On August 25, 2025, Plaintiffs Jeromy Moon, Ricardo Luna, and Guy Graff (collectively, "Plaintiffs") filed their Opposition.  On August 29, 2025, PG&E filed a Reply.

On August 13, 2025, Plaintiffs filed a Motion to Remand.  On August 25, 2025, PG&E filed its Opposition.  On August 29, 2025, Plaintiffs filed a Reply.

Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that these matters are appropriate for decision without oral argument.  The hearing calendared for September 15, 2025 is hereby vacated and the matters are taken off calendar. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs Jeromy Moon, Ricardo Luna, and Guy Graff are armed security guards who work at PG&E's Diablo Canyon Power Plant at Avila Beach in San Luis Obispo, California.  Plaintiffs Moon and Luna are classified as Nuclear Security Officers ("NSOs"), who are armed with rifles and pistols and focus on defending the plant from attack.  Plaintiff Graff is classified as a Zebra Officer ("Zebra"), armed with a rifle but no pistol and focused on plant access, x-rays, and vehicle

searches.  Plaintiffs Moon, Luna, and Graff are all assigned to 4-man or 5-man rotations where the armed NSOs and Zebras are scheduled for rest and meal periods, during which time they should not be on-call or working.

Plaintiffs allege that PG&E has failed to provide Plaintiffs and similarly situated security guards assigned to 4-man or 5-man rotations completely off-duty rest periods and meal periods because, for example: (1) they are required to complete multiple security procedures, including communicating any safety concerns and equipment status to the security guard relieving them of their post; walking to a weapons locker to store their gear; taking off and storing all the gear in the weapons locker; and returning their control key to a key room at the entrance of the plant if they want to go to their car or off-site; (2) it takes a significant amount of time to walk to a suitable resting area and walk between posts; and (3) they are required to maintain their pagers with them at all times, and PG&E sometimes uses the pagers to contact them during their rest periods and meal periods to call them back to work.

Plaintiffs also allege that PG&E does not make restroom facilities accessible to Plaintiffs and similarly situated security guards at all times. According to Plaintiffs, NSOs do not have access to restrooms at any of their posts and are required to call a supervisor to have another security guard relieve them if they want to use the restroom.  Likewise, Zebras who are actively on duty are not allowed to step away to use the restroom without another security guard relieving them.  However, because the power plant is perennially short-staffed, Plaintiffs allege that a relieving security guard is often not available, and, as a result, the guards are required to wait until their rest or meal period to use the restroom.  Plaintiffs allege that PG&E has even put out buckets at some posts for security guards to use as makeshift toilets when a relieving security guard is not available.

On April 4, 2025, Plaintiffs, on behalf of themselves and all others similarly situated, filed a Complaint against PG&E in Alameda County Superior Court, alleging the following causes of action under California law: (1) the failure to provide fully off-duty rest periods in violation of Cal. Labor Code § 226.7 and Industrial Welfare Commission Wage Order No. 4-2001 ("Wage Order 4"); (2) the failure to pay minimum wage for hours worked during meal periods in violation of Cal. Labor Code § 1194 and Wage Order 4; (3) the failure to provide restroom facilities accessible at all times in violation of Cal. Labor Code §§ 6400-6403 and 6407 and Cal. Code Regs., tit. 8, section 3364; (4) the failure to provide accurate wage statements in violation of Cal. Labor Code § 226; (5) the failure to pay all wages due upon termination in violation of Cal. Labor Code §§ 200-203; and (6) unlawful, unfair, and fraudulent business actions and practices in violation of the Unfair Competition Law ("UCL"), Cal. Business and Professions Code §§ 17200-17210.  On July 31, 2025, Plaintiffs filed a First Amended Complaint, adding a claim for civil penalties under the Private Attorneys General Act ("PAGA"), Cal. Labor Code §§ 2698-2699.8.

Plaintiffs' employment is governed by a collective bargaining agreement ("CBA"), between PG&E and Service Employees International Union United Service Workers West ("Union"). The CBA includes a comprehensive rest break letter agreement, entered into on November 17, 2017 ("Rest Breaks Agreement").  In addition, in two arbitration awards, dated August 10, 2010 ("Liability Award") and July 26, 2011 ("Remedial Award"), labor arbitrator Katherine Thompson interpreted and applied Section 15.2 of the CBA, which concerns meal periods and pay for on-call or on-duty meal periods.

Initials of Deputy Clerk  _sr_

PG&E removed this case to federal court on the grounds that the Complaint raises a "federal question" under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), the Atomic Energy Act of 1954 ("AEA"), 42 U.S.C. § 2021(k), and Nuclear Regulatory Commission ("NRC") regulations.

PG&E now moves for Judgment on the Pleadings, arguing that Plaintiffs' rest period and minimum wage claims (and derivative claims) are preempted by Section 301 of the LMRA and that Plaintiffs' restroom access is preempted by the AEA and NRC regulations. Plaintiff conversely move for remand, arguing that their rest period and minimum wage claims (and derivative claims) are not preempted by Section 301 of the LMRA and that their restroom access claim is not preempted by the AEA and NRC regulations.

## II.    LEGAL STANDARD

### A.    Motion for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) governs motions for judgment on the pleadings.  *See* Fed. R. Civ. P. 12(c).  "A Rule 12(c) motion is functionally identical to a motion pursuant to Fed. R. Civ. P. 12(b)(6)."  *Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004) (citing *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)).  "A judgment on the pleadings is properly granted when, taking all the allegations in the pleading as true, the moving party is entitled to judgment as a matter of law."  *Heliotrope General, Inc. v. Ford Motor Co.*, 189 F.3d 971, 979 (9th Cir. 1999) (quoting *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998)).  As with motions brought pursuant to Rule 12(b)(6), in addition to assuming the truth of the facts plead, the court must construe all reasonable inferences drawn from those facts in the nonmoving party's favor.  *See Lonberg*, 300 F. Supp. 2d at 945*; see also Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  "However, judgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment."  *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990) (internal citations omitted).

### B.    Motion for Remand

A motion to remand is the proper procedure for challenging removal.  *See N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1038 (9th Cir. 1995).  The Court may order remand either for lack of subject matter jurisdiction or for any defect in removal procedure.  *See* 28 U.S.C. § 1447(c).

The removal statute is strictly construed, and any doubt about the right of removal is resolved in favor of remand.  *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *see also Prize Frize, Inc. v. Matrix, Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999).  Consequently, if a plaintiff challenges the defendant's removal of a case, the defendant bears the burden of establishing the propriety of the removal.  *See Gaus*, 980 F.2d at 566; *see also Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996) (citations and quotations omitted) ("Because of the Congressional purpose to restrict the jurisdiction of the federal courts on removal, the statute is strictly construed, and federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.").

Initials of Deputy Clerk _sr_

III.    DISCUSSION

    A.    **Plaintiffs' Rest Break and Minimum Wage Claims Are Not Preempted by
Section 301 of the LMRA.**

Section 301 of the LMRA grants federal courts jurisdiction to hear "[s]uits for violation of
contracts between an employer and a labor organization."  29 U.S.C. § 185(a); *Franchise Tax Bd.
of Cal. v. Contr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23 (1983).  "Although § 301
contains no express language of preemption, the Supreme Court has long interpreted the LMRA
as authorizing federal courts to create a uniform body of federal common law to adjudicate
disputes that arise out of labor contracts."  *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1151 (9th Cir.
2019)*; see also Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).

"Critically, not every dispute concerning employment, or tangentially involving a provision of
a collective-bargaining agreement, is pre-empted by § 301." *Kobold v. Good Samaritan Reg'l Med.
Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016) (quoting *Allis-Chalmers Corp v. Lueck*, 471 U.S. 202, 211
(1985)). "[T]he Supreme Court has stressed that '§ 301 cannot be read broadly to pre-empt
nonnegotiable rights conferred on individual employees as a matter of state law.'" *Curtis*, 913 F.3d
at 1152. "For this reason, [s]etting minimum wages, regulating work hours and pay periods,
requiring paid and unpaid leave, protecting worker safety, prohibiting discrimination in employment,
and establishing other worker rights remains well within the traditional police power of the states,'
and claims alleging violations of such protections will not necessarily be preempted, even when the
plaintiff is covered by a CBA. *Id*. at 1152 (quoting *Alaska Airlines v. Schurke*, 898 F.3d 904, 919-20
(9th Cir. 2018) (en banc)).

Courts apply a two-part test to determine whether claims are preempted and, thus, whether
federal jurisdiction exists:

> [F]irst, an inquiry [must occur] into whether the asserted cause of action involves a
> right conferred upon an employee by virtue of state law, not by a CBA. If the right
> exists solely as a result of the CBA, then the claim is preempted, and our analysis
> ends there. . . . If, however, the right exists independently of the CBA, we must still
> consider whether it is nevertheless 'substantially dependent on analysis of a
> collective bargaining agreement.' If such dependence exists, then the claim is
> preempted by section 301; if not, then the claim can proceed under state law.

*Burnside v. Kiewit Pac. Corp.*, 491 F.3d at 1059-1060 (2007) (quoting *Caterpillar Inc. v. Williams*,
482 U.S. at 398-399 (1987).

The parties agree that Plaintiffs' claims involve rights conferred upon Plaintiffs by virtue of
state law, not the CBA.  Accordingly, the Court turns to the second prong of the *Burnside* test*, i.e.*,
whether Plaintiffs' claims are "substantially dependent on analysis of a collective bargaining
agreement."  Under the second prong of the *Burnside* test, to determine whether a state law right
is "substantially dependent" on an analysis of the terms of a CBA, a court must decide whether the
claim can be resolved by "looking to versus interpreting the CBA." *Burnside*, 491 F. 3d at 1060
(quoting *Livadas v. Bradshaw*, 512 U.S. 107, 125 (1994)).  Thus, to invoke § 301 under the second
part of the test, the claim must be so "inextricably intertwined with consideration of the terms of the

Initials of Deputy Clerk  _sr_

labor contract" that the court would be required to interpret the CBA.  *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985); *Burnside*, 491 F. 3d at 1060. The term "interpret" is to be construed narrowly to mean "something more than 'consider,' 'refer to,' 'look to,' or 'apply.'" *Balcorta v. Twentieth Century-Fox Film Corp*., 208 F.3d 1102, 1108 (9th Cir. 2000).  "[C]laims are only preempted to the extent there is an active dispute over 'the meaning of contract terms.'" *Curtis,* 913 F.3d at 1153 (quoting *Alaska Airlines v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018) (en banc).  A defendant's mere reliance on a CBA "as an aspect of a defense is not enough to 'inject[] a federal question into an action that asserts what is plainly a state-law claim.'" *Burnside*, 491 F. 3d at 1060.

1. <u>The resolution of Plaintiffs' rest period claim does not require interpretation of any of the terms of the CBA or Rest Breaks Agreement</u>

As discussed, to determine whether Plaintiffs' rest period claim is preempted under the second step of the *Burnside* inquiry, the Court must determine "whether establishing the elements of the claim will require interpretation of the CBAs."  *Dent v. Nat'l Football League*, 902 F.3d 1109, 1117 (9th Cir. 2018).  For their rest period claim, Plaintiffs only need to establish (1) "[t]hat [they] worked for [PG&E] on one or more workdays for at least three and one-half hours" and (2) "[t]hat [PG&E] did not authorize and permit [Plaintiffs] to take one or more 10-minute rest breaks to which [Plaintiffs] w[ere] entitled."  Judicial Council of California Civil Jury Instructions (2025), CACI No. 2761.  These are "purely factual inquir[ies] [that] do[] not turn on the meaning of any provision of a collective-bargaining agreement."  *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 407 (1988).  Indeed, these factual inquiries do not require interpretation of the CBA but rather may be resolved by examining Plaintiffs' rotation schedules, rosters, time records, pay records, and testimony of putative class members and management.  *See McGhee v. Tesoro Ref. & Mktg. Co. LLC*, 440 F. Supp. 3d 1062, 1069 (N.D. Cal. 2020) (holding that plaintiff's minimum wage, meal break, and rest break claims "require determining Defendants actual policies and procedures over the class period, as well as the requirements of California law" and "[a]lthough the Court may 'look' at the relevant CBAs as evidence of those procedures, the focus remains on Defendants' actions, not the CBAs' authorizations").

PG&E points to several provisions in the Rest Breaks Agreement between PG&E and Plaintiffs' Union that may be potentially relevant to Plaintiffs' state law claims. For example, the Rest Breaks Agreement provides in relevant part:

> The PG&E Security Agreement and the Union have negotiated for paid rest periods that last 15 consecutive minutes for every four hours worked, or major fraction thereof.  The extra five minutes provided for rest periods (over the amount required by California law) should cover most situations where an employee must travel to reach a suitable resting area and return to their work area.  In situations where it does not, additional time shall be provided to ensure that employees have adequate opportunity for ten consecutive minutes of rest beyond the time it takes them to travel to reach a suitable rest area and then return to their work area.

PG&E claims that the undefined terms "additional time," "suitable rest area," "adequate opportunity," and the "time it takes them to travel to a suitable rest area," will require interpretation. However, "a CBA provision does not trigger preemption when it is only *potentially* relevant to the

Page 5 of  9

state law claims, without any guarantee that interpretation or direct reliance on the CBA terms will occur." *Humble v. Boeing Co.*, 305 F.3d 1004, 1010 (9th Cir. 2002).  Whether PG&E authorized and permitted Plaintiffs to take rest breaks in compliance with state law turns on whether PG&E "relieve[d] [its] employees of all duties and relinquish[ed] any control over how employees spend their break time." *Augustus v. ABM Sec. Servs., Inc.*, 2 Cal. 5th 257, 260 (2016). Importantly, there is no indication on the face of Plaintiffs' First Amended Complaint or otherwise that an interpretation of any of the terms in the Rest Breaks Agreement will be required or that there is an "active dispute" over the meaning of the terms in the Rest Breaks Agreement.

As an additional example, PG&E claims that the following provision in the Rest Breaks Agreement will require interpretation:

> The Company may require Security Officers to wear pagers. "Pagers" are one-way communication devices, distinct and separate from "radios," discussed above. Pagers shall be used only to notify employees of a site-wide emergency in areas where the public address system cannot be heard, for the employees' own protection. Because pagers will not be used to notify individual employees of work instructions or call requests, employees have no obligation to perform work in response to emergency pages received. Provided that pagers are used in this limited manner, carrying a pager shall not entitle the Security Officer to a rest period premium.

Contrary to PG&E's contention, Plaintiffs' rest break claim, on its face, does not require interpretation of the Rest Breaks Agreement nor does it rest on any disputed meaning of the terms regarding pagers in the Rest Breaks Agreement.  Indeed, in their First Amended Complaint, Plaintiffs allege that PG&E "sometimes uses pagers similar to radios" to call armed security guards back to work during a meal or rest period, thus making the whole break time "on call."  FAC ¶ 25. Thus, the resolution of Plaintiffs' rest break claim relating to the use of pagers will likely turn on the following factual inquiry (and not on any disputed terms): whether PG&E used the pagers to call armed security guards back to work or it did not.

Accordingly, the Court concludes that Plaintiffs' rest period claim is not preempted by Section 301 of the LMRA.

> 2. <u>The resolution of Plaintiffs' minimum wage claim does not require interpretation of any of the terms of the CBA.</u>

For Plaintiffs' minimum wage claim, Plaintiffs only need to establish that (1) "[t]hat [they] performed work for [PG&E]," (2) "[t]hat [they] w[ere] paid less than the minimum wage by [PG&E] for some or all hours worked," and (3) "[t]he amount of wages owed."  Judicial Council of California Civil Jury Instructions (2025), CACI No. 2701.  California Labor Code "[s]ection 1194 requires that *irrespective of how 'the wages,' or 'hours of work,' are determined under a CBA*, plaintiff[s] [are] entitled to be paid a minimum wage . . . for all hours [they were] under the 'control' of defendant." *Bonilla v. Young's Mkt. Co., LLC*, No. 24-cv-03489-EMC, 2025 WL 916020, at *3 (N.D. Cal. Mar. 26, 2025) (emphasis added) (internal citations omitted); *see also Dominguez v. W. States Fire Prot. Co.*, No. 2:21-cv-07319-RGK-MRW, 2022 WL 2234955, at *5 (C.D. Cal. Feb. 2, 2022) ("The Court need not interpret the CBA to determine whether Plaintiff was under Defendant's 'control'

during the relevant time periods."); *Alexander v. Republic Servs.*, No. 2:17-0644 WBS AC, 2017
WL 2189770, at *3 (E.D. Cal. May 18, 2017) (The "court would merely have to decide whether
defendant[] paid plaintiff and putative class members minimum wages for all hours they worked, an
inquiry that does not implicate any CBA provisions.").  The Court concludes that it will be
unnecessary to interpret the CBA to resolve Plaintiffs' minimum wage claim.

Although PG&E claims that Section 15.2 of the CBA (governing meal periods) will require
interpretation to resolve Plaintiffs' minimum wage claim, PG&E fails to satisfactorily explain why
any of the terms in Section 15.2 will require such interpretation.  As PG&E explicitly stated in its
Notice of Removal, "Arbitrator [Katherine] Thompson interpreted the entire provision at issue,
including, but not limited to, undefined phrases such as 'subject to being on call[.]'" Notably, there
is no active dispute over meaning of the terms of the CBA or the Thompson decisions.  The
Thompson liability award clearly provides that "in 2007 and continuing into 2008, security officers'
restrictions were sufficient that they met the conditions of 'subject to being on call and will respond
if necessary to plant and/or security emergencies'" even when they were not "on schedules with
paid meal periods."  Thus, Arbitrator Thompson ordered PG&E to "pay to all security officers on
duty at any time from February 28, 2007, until May 16, 2008, the appropriate compensation for all
meal breaks."   The award clearly provides that the officers are entitled to compensation for meal
periods only until May 2008.

PG&E's claim that interpretation of the CBA and the Thompson decisions is necessary to
evaluate whether security guards have already been paid for all meal periods in which they were
"subject to being on-call," is misplaced.  Whether Plaintiffs have in fact been paid turns on PG&E's
actual payment practices, evidenced through time records, payroll records, and witness testimony,
not on an interpretation of the CBA or the Thompson decisions.  The court in *Melchor* addressed a
similar issue and held that "even if Defendant were correct in asserting the CBA included ten extra
minutes of break time . . . to compensate workers for donning and doffing time, this would not
prove that class members were actually paid for all the time that they were entitled to which is the
issue presented here."  *Melchor v. Foster Poultry Farms, Inc.*, No. 1:12-CV-00339 AWI, 2012 WL
1836289, at *6 (E.D. Cal. May 21, 2012), report and recommendation adopted, No.
1:12-CV-00339-AWI, 2012 WL 2990691 (E.D. Cal. July 20, 2012)  The court held that Plaintiffs'
claim could be resolved by examining "time records and punch cards" as well as "testimony of
witnesses," rather than interpreting the CBA.  *Id.*

Because the Court concludes that Plaintiffs' minimum wage claim does not require an
interpretation of any terms of the CBA or the Thompson decision, the Court concludes that
Plaintiffs' minimum wage claim is not preempted by Section 301 of the LMRA.

**B.    Plaintiffs' Restroom Access Claim is Not Preempted by the AEA and NRC
regulations.**

Plaintiffs' third cause of action for failure to provide access to restroom facilities at all times
is premised on  Cal. Labor Code §§ 6400-6403 and 6407 and Cal. Code Regs., tit. 8, section 3364.
 Cal. Code Regs., tit. 8, section 3364, requires in relevant part that "toilet facilities shall be kept
clean, maintained in good working order and be accessible to the employees at all times."

PG&E argues that Plaintiffs' third cause of action for failure to provide access to restroom

Initials of Deputy Clerk __sr__

facilities "at all times" is preempted by the AEA and the NRC's exclusive authority to ensure that
PG&E's security guards are monitoring for intrusion "at all times" to protect the public from
potential radiation hazards. Plaintiffs argue that the third cause of action is not preempted by the
AEA and NRC because the Cal/OSHA health and safety statutes and restroom access regulation
fall outside of the AEA's preemptive scope.

In the absence of explicit statutory language, state law is pre-empted when it regulates
conduct in a field that Congress intended the federal government to occupy exclusively. *English v.
General Elec. Co.*, 496 U.S. 72, 79 (1990).  As the Supreme Court held, in passing the AEA,
Congress "intended that the federal government should regulate the *radiological safety aspects*
involved in the construction and operation of a nuclear plant . . . ." *Pac. Gas & Elec. Co. v. State
Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 205(1983) (emphasis added).  "[T]he
federal government has occupied the entire field of nuclear safety concerns, except the limited
powers expressly ceded to the states." *Id.* at 212. As expressly provided in the statute, however,
the AEA shall not be "construed to affect the authority of any State . . . to regulate activities *for
purposes other than protection against radiation hazards*."  42 U.S.C. § 2021(k) (emphasis added);
*Pac. Legal Found. v. State Energy Res. Conservation & Dev. Com*., 659 F.2d 903, 907 (9th Cir.
1981) ("[T]he Atomic Energy Act does not preempt state laws enacted for purposes other than
protection against radiation hazards."); *id*. at 922 ("Congress intended to preempt only state
regulation of radiation hazards associated with nuclear power, and not state regulation for other
purposes.").

However, a finding that a State statute was enacted for the purpose of protecting against
radiation hazards is not *"necessary* to place a state law within the pre-empted field." *English v.
Gen. Elec. Co.*, 496 U.S. 72, 84 (1990).  The Supreme Court "took great pains to make clear that
state regulation of matters directly affecting the radiological safety or nuclear-plant construction
and operation, even if enacted out of nonsafety concerns, would nevertheless infringe upon the
NRC's exclusive authority." *Id.* (cleaned up).  The Supreme Court cautioned, however, that courts
"must bear in mind that not every state law that in some remote way may affect the nuclear safety
decisions made by those who build and run nuclear facilities can be said to fall within the
pre-empted field." *Id.* at 85.  As the Supreme Court recognized:

> We have no doubt, for instance, that the application of state minimum wage and child
> labor laws to employees at nuclear facilities would not be pre-empted, even though
> these laws could be said to affect tangentially some of the resource allocation
> decisions that might have a bearing on radiological safety. Instead, for a state law to
> fall within the pre-empted zone, it must have some direct and substantial effect on
> the decisions made by those who build or operate nuclear facilities concerning
> radiological safety levels.

*Id.*

The Court concludes that the Cal/OSHA general health and safety statutes and restroom
access regulation fall outside of the AEA's preemptive scope. Indeed, they regulate activities "for
purposes other than protection against radiation hazards" and establish general health and safety
requirements applicable to all employers.  42 U.S.C. § 2021(k); *see* Cal Lab. Code §§ 6400-6403,
6407; Cal. Code Reg., tit. 8, § 3364(b); Lab. Code § 6300 ("The California Occupational Safety and

Initials of Deputy Clerk _sr_

Health Act of 1973 is hereby enacted for the purpose of assuring safe and healthful working
conditions for all California working men and women . . . .").  Moreover, the Court concludes that
the application of Cal/OSHA's general health and safety statutes and restroom access requirement
to armed security guards who work at PG&E's Diablo Canyon Power Plant would at most
tangentially affect security staffing decisions that bear on radiological safety.  Certainly, it would
require PG&E to maintain adequate staffing to ensure that its armed security guards may use the
restroom "at all times" while also complying with its obligations to provided continuous surveillance
and an armed response under NRC regulations, but this is not the type of direct and substantial
effect on decisions concerning radiological safety that concerned the Supreme Court.  Notably,
PG&E does not contend that California's meal and rest break laws are pre-empted by the AEA or
NRC regulations, which have a similar effect on security staffing decisions as the restroom access
regulation relied on by Plaintiffs.

In addition to field pre-emption, state law is also pre-empted "to the extent it actually
conflicts with federal law." *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990) "Thus, the Court has
found pre-emption where it is impossible for a private party to comply with both state and federal
requirements, or where state law stands has an obstacle to the accomplishment and execution of
the full purposes and objectives of Congress. *Id.* (cleaned up). The Court concludes that Cal/OSHA
general health and safety statutes and restroom access regulation do not "conflict[] with federal
law." *Pac. Legal Found.*, 659 F.2d at 926.  Tellingly, PG&E cannot point to a single NRC
regulation that prevents it from hiring additional security guards to ensure that it can both satisfy its
security obligations under the NRC regulations and provide proper restroom relief for guards.

Accordingly, the Court concludes that Plaintiffs' restroom access claim is not preempted by
the AEA and NRC regulations.

   **C.      Plaintiffs' derivative claims are not preempted by Section 301 of the LMRA or
            the AEA and NRC Regulations.**

Plaintiffs' fourth through seventh causes of action—for  failure to provide accurate wage
statements in violation of Cal. Labor Code § 226, failure to pay all wages due upon termination in
violation of Cal. Labor Code §§ 200-203, unlawful, unfair, and fraudulent business actions and
practices in violation of the UCL, Cal. Business and Professions Code §§17200-17210, and civil
penalties under PAGA, Cal. Labor Code §§ 2698-2699.8—are all derivative of Plaintiffs' minimum
wage, rest period, and restroom access claims. Thus, these claims are also not preempted under
Section 301 of the LMRA or the AEA and NRC Regulations.  *See, e.g., Atuatasi v. Securitas Sec.
Servs. USA, Inc.*, 2018 WL 2748259, at *6 (C.D. Cal. June 6, 2018) ("Because Plaintiff's first,
second, and fifth claims are not preempted by the LMRA, Plaintiff's third and fourth claims are also
not preempted.").

## IV.    CONCLUSION

For the foregoing reasons, PGE's Motion for Judgment on the Pleadings is **DENIED**, and
Plaintiff's Motion to Remand is **GRANTED**.  This action is remanded to Alameda County Superior
Court for lack of subject matter jurisdiction.

IT IS SO ORDERED.

Initials of Deputy Clerk _sr_